people versus Rondo I believe May it please the court. Counselor, my name is Lawrence O'Neill and I represent James Ferando in this cause. Mr. Ferando entered into an open guilty plea agreement in which he pled guilty to aggravated discharge of a firearm and aggravated unlawful restraint. Both are probationable offenses. The trial court sentenced Ferando to concurrent terms of four and three years in prison. Ferando argues in his appeal that the trial court abused his discretion in not sentencing him to probation after finding that he was a threat to the public. Under Section 561 of the Unified Code of Corrections, the trial court shall impose a sentence of probation unless, having regard to the nature and circumstance of the offense and the history and character of the offender, the court finds that imprisonment is necessary for the protection of the public or appropriation would deprecate the seriousness of the offense. The sentencing court is required to expressly state which exception it relied on in imposing a sentence other than probation. Here the court did not sentence Ferando to probation because the court found that he was a threat to the public and specifically to the McCoys. This was an abuse of the trial court's discretion. First, there was no evidence regarding Ferando's history and character to indicate that he was a threat to the public. Ferando was age 53 at the time of the offense and had lived his entire life in the community as a law-abiding and productive citizen. He had no prior criminal record and had been steadily employed throughout his adult life, including owning and operating a successful over-the-road trucking business from January 1980 until his arrest in September 2000. He also had rental property to be operated. He had no history of violence or lawlessness. Moreover, after his arrest and before sentencing, Ferando voluntarily attended 28 weeks of counseling with a professional counselor named Ted Parker. Parker testified at the sentencing hearing that Ferando successfully completed the counseling program in which Ferando was required to draft and submit an anger management plan. Parker opined that Ferando was sincere about handling his anger and Parker believed that Ferando does not present a danger to the community. In addition to attending counseling, Ferando's conduct during the 10 months from his release on bond in February 2008 until the sentencing in December 2008 indicates that he was no threat to the McCoys or anyone else in the community. During this time, Ferando and the McCoys lived and worked in the same community, and yet Chad McCoy, one of the victims, testified at sentencing that Ferando did not threaten him or his family during this time period. Neither Chad or Daniel indicated that they feared Ferando should he be placed on probation. Thus, the judges find that Ferando is a threat to the McCoys and not supportive of the record and contrary to Ferando's conduct during this time period. In addition, the record indicates that the circumstances of this offense were not likely to recur and that this offense was an anomaly in Ferando's lawful and productive life before this event. First, Ferando was distressed and under great duress during this time period. His father had recently passed away and he was involved in a bitter, contested probate dispute with his brother and sister. These were difficult times for Ferando and the probate dispute was coming to a head with an upcoming hearing schedule which brought the McCoys into the scene. Ferando asked the father, Kevin McCoy, to testify at the probate hearing in Ferando's behalf. Kevin refused. Ferando then terminated the McCoys' lease where Ferando was the landlord of a building that Chad McCoy rented for his business. The McCoys then approached Ferando complaining about the termination of the lease. One thing led to another and Ferando eventually ended up firing shots, not hitting the vehicle that the McCoys were in. The only bullet from the shot was found on the top of a roof of a building close by, which indicates that Ferando raised his shot and shot up high. Ferando was an expert. He did not intend to shoot the McCoys during this incident. The main point, however, is that Ferando's conduct here was completely out of character. It was the result of these unusual circumstances in his life and the death of his father and the upcoming probate hearing. There was no indication in the record that he would engage in this type of behavior again. All of those circumstances you've described are the kinds of things that people face in their lives every day, though, aren't they? That's absolutely true, Your Honor. I cannot deny that. And here it ends up with the defendant with gunplay. Correct. The reason that I've emphasized this is, one, it was an aberration in Ferando's life. This event never had occurred before. It was law-abiding, productive, and this was a triggering event. He acted very out of order. Now, considering that this is out of character and inconsistent with his life, and the fact that he attended these 28 weeks voluntarily of counseling indicates that this type of conduct wouldn't be unlikely to occur had he been sentenced to probation. Granted, though, this was a serious incident. And the trial judge, I believe, stated, didn't he, at the time of sentencing that his past good conduct is why he got the minimum prison sentence. Well, that's true. And if I was arguing just an excessive sentence argument, that perhaps would be the determining question. But I'm arguing here in a very narrow argument that under 561 of the Unified Code of Correction, probation, the judge shall sentence the offender to probation unless he finds that the defendant is a threat to the public. So the court in this case made that finding. So the narrow question here that I'm presenting in my argument is not perhaps if there was no other factors in mitigation of sentence or that the sentence was excessive per se, but that the judges find that Ferrando was a threat to the community, was an abuse of discretion. Well, there is evidence of that in the record, correct? Regarding what, Your Honor? Regarding whether or not he would be a threat to the community. I mean, the testimony of Chad and his father stated, according to the people's brief, that they were afraid of him and their family was afraid of him. Therefore, they consider him a threat. But there are other factors to consider, first of all. I understand that, but I'm just saying that there is some evidence in the record to support that conclusion, is there not? Yes. The McCoy's testimony at the sentencing hearing, yes, they did express the fact that they feared. They still had some fear of Ferrando. But that is in a broader context of the other evidence presented at the sentencing hearing, such as the fact that Ferrando voluntarily entered into a 28-week felony. Is the issue what you and I would have done, had we been the trial judge in sentencing to probation? Or is the issue, does the record reflect an abuse of discretion factually by the trial judge? I think it's the latter, Your Honor, but I think the evidence presented in bail is… I mean, you and I may have thought the guy was an appropriate candidate for probation based upon the statute that says you shall do that unless you find it. I agree with that, Your Honor, but in considering whether the – in light of the evidence that was presented, whether there was an abuse of discretion, we have to consider in lay that evidence that was presented at the sentencing hearing. And I think a very strong evidence on Ferrando's defense here is that Ted Parker, who was a professional counselor who counseled Ferrando for 28 weeks, testified that in his opinion Ferrando was not a threat to the community. Now, that's strong evidence. And the fact that, you know, that Ferrando – all of those factors considered, I think, Your Honors, indicates that it was an abuse of the trial judge's discretion to make a finding that Mr. Ferrando was a threat to the community. Therefore, Mr. Ferrando asks Your Honors to find that the trial court abused his discretion in making that finding and vacate his sentence and remand the cause for another sentencing hearing before a different judge. Thank you very much, Your Honor. Thank you, counsel. Mr. Charman. Okay. May it please the court? Counsel Neha Charman on behalf of the people of the state of Illinois. Briefly, Your Honors, I just want to address the jurisdiction argument. And I say briefly because I think it's pretty well laid out in the people's brief. But there were a few points that were addressed in the defendant's reply brief that I wanted to discuss. And the first – and unless Your Honors want me to delve into it, I'll leave the arguments to the brief. But essentially, I want to start with the fact that the proposition that this court can revisit the issue of jurisdiction at any time, including right now, is a well-established one. And the defendant in his reply brief argues that the case that the people cited for that proposition, Fredman Brothers Furniture v. Department of Revenue, cannot be used for that proposition because it is limited to administrative law. Well, that's just not true. The Supreme Court has limited the application of that case to administrative law only in the issue of statutory causes of action, which is what that case is about. The general proposition that this court can revisit jurisdiction at any time is well-established in the law. Jarrett v. Jarrett, which Fredman Furniture relied on, states that as well. The second issue on jurisdiction is in response to the defendant's argument in the alternative that revestment applies and gives this court jurisdiction. The defendant is misapplying the Kading case because in that case, there was no objection by the state and there was also active participation in the case. Here, the state did not object to the second motion to reconsider. However, there was no active participation. I'll note that the people submitted a motion to cite additional authority. That motion is pending. The two cases are Sears v. Sears and In re Merit of Addison v. Cosner. What those cases pretty much say is in order for revestment to apply, both parties must acquiesce. That involves active participation beyond the failure to file an objection or to set an objection. In this case, revestment does not apply. The state never believed the second motion to reconsider was valid. Therefore, that issue is removed. Moving on to sentencing, I think your honors brought up pretty much the main points as to why abuse of discretion cannot be found. What I wanted to clear up were a few issues of fact that seem to be in contention that should not be in contention because the record is pretty clear. I just want to say there is no issue of self-defense in this case. The defendant pled guilty to the two felonies. If you wanted to go to trial and assert imperfect self-defense or mistaken self-defense, you could have. Basically, what the record shows is that the defendant and Chad McCoy were in Chad McCoy's place of business. This place of business was housed on property that the defendant owned. As counsel said, the defendant wanted Chad's father, Daniel, to help him in a probate case. Chad said his father would not. The defendant told Chad he could no longer remain on the property. Chad's father, Daniel, shows up, asks why his son is being kicked out, and heated words are exchanged. At that point, the defendant left the premises to go back to his house to retrieve his gun. When the defendant left, Chad and Daniel got in their cars to leave. The defendant then came back and fired the shot at Chad, then ran up to Daniel's car, pointed the gun at Daniel's driver's side window, pulled the trigger twice. Luckily, the gun was out of bullets by that point. But the reason I'm going over these facts is the defendants' reply brief and the defendant himself during sentencing kept saying he had no other choice, this was self-defense, that the victims were trying to run him over. That's just ludicrous. The facts clearly state there was no self-defense. No one was trying to run him over. He retrieved the gun before he even knew the victims were in their car. The final point I want to make is in reference to Section 561. And counsel was arguing that the defendant is not a danger to the public. Well, as Your Honor has already pointed out, the trial court disagreed. They have deference in this case. One other point that can be made, though, probation would also deprecate the seriousness of the defendant's conduct. And the trial court talked about how the potential that the defendant's conduct resulted in was very serious. That's substantial compliance right there. The defendant or counsel is wrong in asserting that the court needs to explicitly say probation is inappropriate because it would deprecate the seriousness of the conduct. That's not required. All substantial compliance, as People v. Cox say, all that's required is for the trial court to consider the factors, to say that it's considered the factors, or look at the pre-sentence investigation report. That's all. They don't need to say explicitly those words. And in this case, the trial court had plenty of evidence to go on to argue that probation for a crime that could have resulted in very serious injury to the victims isn't appropriate. And as Your Honor has already pointed out, there were mitigating factors. He did have no prior criminal record. He was working full-time. But as the trial court judge said, that's the reason he got the minimum that was accounted for. There were aggravating factors, of course, such as the victims were unarmed. They were leaving the scene when they were shot at. So all of that together creates this very balanced view that the trial court took in giving the defendant the minimum. If there are no further questions, Your Honors, I think that pretty much sums up why that needs to be affirmed. Mr. O'Neill, do you have rebuttal? Yes. Your Honor, regarding the jurisdiction question, I think it is important to note that this court has granted Mr. Ferrando a leave to file a notice of appeal on February 14, 2010. And I would ask this court to not reopen that issue. Regarding revestment, the State did not object to the trial court's hearing and ruling on Mr. Ferrando's second motion to review sentence on September 24, 2009. So I think there is an alternative. The revestment doctrine is valid here. And regarding the self-defense claim, I was not trying to argue that Mr. Ferrando suggested he was justified in his conduct or that he had a reasonable belief that his life was in danger or anything like that. That was taken from Mr. Ferrando's statement in ad hocution at the sentencing hearing that the trial court relied on considerably in finding that Ferrando was not remorseful or did not take responsibility for his act. I just ask Your Honors to consider the full statement that Mr. Ferrando made in ad hocution at the sentencing hearing, in which I think the predominant sentiment is regret and contrite and sorry for his conduct. And he accepted full responsibility by pleading guilty and voluntarily attending counseling sessions. So he's not claiming that it was self-defense. He was just trying to explain how events unfolded. And, again, he was regretful and sorry and apologized to the employees for his conduct. Are there any other questions, Your Honors? Thank you, counsel. Thank you very much. Thank you for y'all's briefs. We'll take a matter under advisement.